**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BROTMAN NUSBAUM IBRAHIM,
PATIENT IDENTIFIED AS "O.O",
MARYLUZ HUET SELL, and PATIENT'S
SPOUSE IDENTIFIED AS "R.O.",

        Appellants,

v.                                                        Case No: 8:15-cv-1093-T-17

FINR III, LLC,

        Appellee.

_____

**ORDER DENYING MOTION FOR LEAVE TO TAKE INTERLOCUTORY APPEAL**

This cause came before the Court pursuant to the *Respondents' Motion for Leave to File Interlocutory Appeal* (Doc. No. 1-3) (the "**Motion**") filed by the Appellants, Brotman Nusbaum Ibrahim, et al. (the "**Appellants**"),[1] the *Appellee's Response in Opposition to Motion for Leave to File Interlocutory Appeal* (Doc. No. 6) (the "**Response**") filed by the Appellee, FINR III, LLC (the "**Appellee**"), the *Respondents' Supplement to the Motion for Leave to File Interlocutory Appeal* (Doc. No. 7) (the "**Supplement**") filed by the Appellants, and the response in opposition thereto filed by the Appellee (Doc. No. 8) (the "**Supplemental Response**").  For the reasons set forth below, the Motion is **DENIED.**

## I.    Background

The Appellant filed a voluntary petition under chapter 11 of the Bankruptcy Code on January 4, 2013 (the "**Petition Date**").

_____

[1] For ease of reference the Appellants are referred to both collectively and individually as the "Appellants."  However, where appropriate, the Court will refer to Appellant "O.O." on an individual basis.

Prior to the Petition Date, O.O suffered a permanent and catastrophic brain injury. Thereafter, on or about September 17, 2010, O.O. was admitted to a medical rehabilitation facility operated by the Appellee.  In exchange for the services provided to O.O. by the Appellee, the parties executed several letters of protection (the "**LOPs**").  The LOPs allowed the O.O. to receive medical rehabilitation services at the Appellee's facility and, in exchange, the Appellee received a lien on the proceeds of any medical malpractice settlement obtained by the Appellants.  On April 11, 2011, the Appellants filed suit against Lawnwood Medical Center, Inc. ("**Lawnwood**"), alleging that Lawnwood's negligence caused O.O.'s injuries.  On December 6, 2012, Lawnwood filed a third-party complaint against the Appellee, alleging that the Appellee was charging an unreasonable amount for O.O.'s care.

On August 29, 2013, the bankruptcy court entered an order confirming the Appellee's plan of reorganization.  One of the primary funding mechanisms for the Appellee's plan of reorganization is the recovery of monies it is owed under the LOPs. The effective date of the plan of reorganization was December 27, 2013.  Prior to the effective date, on December 2, 2013, Lawnwood filed a motion in state court to determine the reasonableness of the Appellee's lien against the proceeds of any settlement obtained by the Appellants.  The state court conducted a hearing on February 14, 2014, over the Appellee's objections, which resulted in entry of an order providing that the reasonable amount of the Appellee's lien was $350,000.00.  Thereafter, on April 30, 2014, the Appellants and Lawnwood confidentially settled O.O.'s medical malpractice claim.  On May 2, 2014, the Appellants sought equitable distribution of $430,000.00 of the settlement

proceeds to the Appellee in full satisfaction of the LORs. On May 30, 2014, Lawnwood dismissed the Appellee from the state court action.

On June 11, 2014, the Appellee filed an adversary proceeding against the Appellants in bankruptcy court. The filing of the adversary proceeding resulted in the stay of the equitable distribution motion pending before the state court. The adversary complaint contained four counts: (i) Count I – to determine the extent, validity, and priority of the Appellee's lien; (ii) Count II - declaratory relief regarding the Appellee's right to the settlement proceeds; (iii) Count III – turnover of the settlement proceeds to the Appellee; and (iv) Count IV – injunction staying disbursement of the settlement proceeds pending the bankruptcy court's ruling on Counts I – III. The Appellants moved to dismiss the adversary complaint. On March 18, 2015, the bankruptcy court entered an order denying the motion as to Counts I and II.

On May 1, 2015, the Appellants filed the Motion, seeking interlocutory review of the bankruptcy court's refusal to dismiss Counts I and II of the adversary complaint. The specific issues identified by the Appellants as controlling questions of law warranting interlocutory review are: (i) did the bankruptcy court fail to apply the *Rooker-Feldman* doctrine to preclude the re-litigation of a dispute which was already litigated and concluded in State Court; (ii) did the bankruptcy court fail to abstain from hearing a matter involving a controlling question of state law; and (iii) did the bankruptcy court fail to properly apply Florida's law of collateral estoppel so as to preclude the re-litigation of an issue which was litigated and determined in state court after the Appellee had a full and fair opportunity to litigate.

The Appellee filed the Response on May 18, 2015, arguing that interlocutory review was not appropriate because (i) resolution of the issues raised by the Appellants will require the Court to conduct a fact-intensive review of the record, and (ii) even if a district court ultimately reversed the bankruptcy court's ruling, a successful appeal would not materially advance the termination of the litigation because the Appellee would be entitled to amend its complaint.  On August 31, 2015, the Appellants filed the Supplement, in which they point out that on August 20, 2015 the bankruptcy court entered an order abstaining from deciding Count III.   On September 14, 2015, the Appellee filed the Supplemental Response, noting that it is the bankruptcy court's intention to resolve Counts I and II before allowing the equitable distribution matter to be decided in state court.

## II.    Legal Analysis

A district court may consider interlocutory appeals from orders entered by bankruptcy courts. 28 U.S.C. § 158(a)(3).   In determining whether to exercise its discretion to consider such an appeal, district courts draw upon the criteria set forth in 28 U.S.C. § 1292(b). *See Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 620 at n.5 (11th Cir. 1985).  In particular, district courts consider (i) whether the order involves a controlling question of law, (ii) as to which there is a substantial ground for difference of opinion, and (iii) whether an immediate appeal may materially advance the ultimate termination of the litigation. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251 (11th Cir. 2004).  "Even when all those factors are present, the court of appeals has discretion to turn down a § 1292(b) appeal." *Id.* at 1259.  This is because "interlocutory appeals are inherently disruptive, time-consuming, and expensive . . . and consequently

are generally disfavored." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000).

### A.    Controlling Question of Law

A controlling question of law is a question regarding "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *McFarlin*, 381 F.3d at 1258. A controlling question of law is not "the application of settled law to fact," or a question that requires the Court to go "rooting through the record in search of the facts." *Id.* Rather, a controlling question of law is an "abstract legal issue" or an issue of "pure law" that can be decided "quickly and cleanly." *Id.* Moreover, "[t]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Id.* at 1260.

Here, the issues raised in the Motion, as framed by the Appellants, do not "question the meaning of a statutory or constitutional provision, regulation, or common law doctrine." Rather, the issues framed by the Appellants relate to whether the bankruptcy court correctly applied the settled legal doctrines of *Rooker-Feldman*, abstention, and collateral estoppel to the facts of the case. As a result, the Appellants do not raise issues of pure law that can be decided "quickly and cleanly." To the contrary, they raise mixed questions of law and fact that would require the reviewing court to go rooting through the record in search of facts.

Moreover, even if more artfully stated, it is not clear that the issues raised in the Motion could ever be framed as an issue of pure law. This is because a state court's determination of the reasonable amount of a lien is not necessarily coextensive with a bankruptcy court's determination as to the validity, priority, or extent of a lien. Specifically,

a determination as to the "validity, priority, or extent of a lien" involves three separate analyses: (i) a determination as to the "validity" of the lien, i.e. "the existence or legitimacy of the lien itself;" (ii) a determination as to the "priority" of the lien, i.e. "the lien's relationship to other claims or interests;" and (ii) a determination as to the "extent" of the lien, i.e. "the scope of the property encompassed by or subject to the lien." *In re Passavant*, 444 B.R. 378, 384 (Bankr. S.D. Ohio 2010).   In contrast, a state court's determination as to the reasonable amount of a lien implicates, at most, the validity and/or extent of the lien; but not its priority.   Given the nuanced distinctions between a proceeding under Federal Rule of Bankruptcy Procedure 7001(2) and a state court's determination as to the reasonable amount of a lien, the Court strongly doubts that the issues raised in the Motion can be stated at a high enough level of abstraction to warrant interlocutory review.

### B.      Substantial Ground for Difference of Opinion

To demonstrate the existence of a substantial ground for difference of opinion, the appellant "must show that at least two courts interpret the legal principle differently." *Figeroa v. Wells Fargo Bank, N.A.*, 382 B.R. 814, 824 (S.D. Fla. 2007).   In contrast, merely "[s]howing that the order for which appeal is sought presents a difficult ruling, or demonstrating a lack of authority on the legal issue, is not sufficient." *Id.*  With respect to the bankruptcy court's alleged failure to apply the *Rooker-Feldman* doctrine, the Appellants do not cite to any authority that says a bankruptcy court lacks authority to determine the validity, priority, and extent of a lien under the circumstances present in this case.  Rather, the Appellants cite to inapposite United State Supreme Court authority addressing the applicability of the *Rooker-Feldman* doctrine in different contexts.  *See, e.g.*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (addressing

whether a federal court has authority to consider challenges to state-court decisions regarding bar admission rules).

As to the issue of abstention, the Appellants contend that the bankruptcy court should have abstained because the Appellee's claims were "non-core matters." (Motion, at ¶ 25). This argument appears to be misguided, as an action to determine the "validity, extent, or priority of liens" is designated as a "core proceeding" under 28 U.S.C. § 157(b)(2)(K). Even putting that issue aside, the Appellants fail to identify any split of authority regarding the mandatory or permissive abstention doctrines identified in the Motion. Accordingly, at best, the Motion shows that the bankruptcy court's order presents a difficult ruling, or that there is a lack of authority addressing the issues raised by the Appellants.

Finally, as to the issue of collateral estoppel, the Appellants similarly fail cite to any split of authority regarding whether a party may litigate the validity, priority, or extent of a lien in bankruptcy court following a state court's determination of the reasonable amount of the lien. Instead, the Appellants have simply argued that the bankruptcy court's decision not to dismiss the Appellee's case on collateral estoppel grounds was incorrect. This is an insufficient showing to warrant allowing the Appellants to take an interlocutory appeal of the bankruptcy court's decision.

### C. Material Advancement of the Litigation

The requirement that a proper interlocutory appeal advance the termination of litigation "is not a difficult requirement to understand." *McFarlin*, 381 F.3d at 1259. "It means that the resolution of the controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Id.* Stated differently, the interlocutory appeal must "substantially reduce the amount of litigation left in the case." *Id.* Here, the

Court is concerned that allowing an interlocutory appeal will complicate, rather than simplify, the litigation between these parties. As set forth in the Supplement and Supplemental Response, the bankruptcy judge has laid out a process whereby both she and the state court will resolve the remaining issues regarding the Appellee's lien. Allowing an interlocutory appeal at this juncture of the proceedings would undermine both courts' ability to grant the parties relief in an expedient manner. To the extent the parties are unhappy with the relief ultimately granted by either court, they may appeal those decisions at the appropriate time.

## III.  Conclusion

Accordingly, it is

**ORDERED** that the Motion is **DENIED**. The appeal is **DISMISSED**, and the Clerk of Court is directed to enter judgment accordingly and to close this case.

It is further **ORDERED** that the Clerk of Court shall transmit a certified copy of this order to the United States Bankruptcy Court Clerk's Office.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 3rd day of February, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to: All Parties and Counsel of Record